IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01111-PAB

ADIN BASS-KEENA,

     Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER

---

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Adin Bass-Keena on April 22, 2021. Plaintiff seeks review of the final decision of defendant (the "Commissioner")[1] denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, as well as for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383(c). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

## I.  BACKGROUND

On October 31, 2018, plaintiff applied for social security benefits under Title II of the Act and, on February 27, 2020, for supplemental security income under Title XVI of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, she is substituted as defendant in this case for Andrew M. Saul, former Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

the Act.  R. at 12.  In both applications, plaintiff alleged a disability onset date of June

15, 2017.  *Id.*  Plaintiff's Title II claim was initially denied on June 10, 2019 and on

reconsideration on January 10, 2020.  *Id.*  Plaintiff requested a hearing before an

administrative law judge ("ALJ").  *Id.*

       On December 1, 2020, the ALJ issued a decision denying both of plaintiff's

claims.  R. at 9, 25.  The ALJ found plaintiff has not engaged in substantial gainful

activity since the onset date and had a severe impairment of epilepsy, which

significantly limits plaintiff's ability to perform basic work activity.  R. at 14.  The ALJ also

found that plaintiff has non-severe impairments of left hip and gastroesophageal reflux

disease.  R. at 15.  The ALJ determined that plaintiff does not have an impairment or

combination of impairments that medically equals of the severity of one of the listed

impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925,

and 416.926.  R. at 17.  Ultimately, the ALJ concluded that plaintiff has the residual

functional capacity ("RFC") to perform light work as defined in 20 C.F.R.

§§ 404.1567(b), 416.967(b) with the following qualifications:

> the claimant is capable of occasionally lifting and carrying 20 pounds,
> frequently 10 pounds.  He can sit for approximately six hours in an eight-
> hour day, and he can stand or walk for approximately six hours in an
> eight-hour day.  He can occasionally climb ramps or stairs, and never
> climb ladders, ropes, or scaffolds.  He should never be required to balance
> as part of his job requirements.  The claimant can occasionally crouch.
> He can never have exposure to extremes of heat or cold.  He can
> occasional exposure to fumes, odors, and/or irritants.  He should never
> work around unprotected heights, moving and/or dangerous machinery,
> and never be required to drive motor vehicles in the work setting.

R. at 18.  The ALJ determined that plaintiff, who at the time of the alleged disability

onset date was 21 and at the time of the hearing was 24, was capable of performing

jobs that exist in significant numbers in the national economy.  R. at 23.

On February 25, 2021, the Appeals Council denied plaintiff's request for a review of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(1)–(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.  § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. §§ 404.1520(b)–(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff raises two objections to the ALJ's decision: (1) the ALJ did not explain with sufficient specificity his reasons for finding that plaintiff did not meet or equal Listing 11.02 or properly evaluate "consistency factors pursuant to SSR 16-3p," and (2) the ALJ erred in finding the opinion of Judith Ray, Ph.D. not persuasive.  Docket No. 13 at  7–14.  The Court addresses each in turn.

### A.  Listing 11.02 and Social Security Rule 16-3p

Plaintiff objects that the ALJ did not explain "with sufficient specificity his reasons for finding that [plaintiff] did not meet or equal Listing 11.02" and "failed to properly evaluate consistency factors pursuant to SSR 16-3p."  *Id.* at 7.  Plaintiff contends that he meets or exceeds Listing 11.02B because he "experienced dyscognitive seizures more than once a week for at least 3 consecutive months."  *Id.*  Plaintiff also mentions

"absence seizures." *Id.* at 4, 8–10.[3]

The ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or equals the severity of a listed impairment, and the ALJ specifically considered impairments under Listing 11.02.  R. at 17.  The ALJ determined that there was "no evidence in the record that [plaintiff's] impairments meet any of the specific requirements of any listing, and all of [plaintiff's] brain MRI scans, brain CT scans, and EEG studies have been normal throughout the records."  *Id.*  The ALJ found that there was "insufficient evidence in the record that [plaintiff's] seizures occurred with the frequency required by the listing."  *Id.*

The ALJ further noted that plaintiff testified that, on a bad week, he would have one to three seizures, R. at 18, and was taking his medication as prescribed, yet, over the past year, he had five seizures a month.  R. at 18–19.  The ALJ determined that plaintiff's testimony and complaints to his physicians were not consistent with the record evidence and his objectively normal findings on MRIs, CTs, and EEGs.  *Id.*  For

---

[3] Listing 11.02 requires a "detailed description of a typical seizure" characterized by certain criteria.  Relevant here, paragraph B of Listing 11.02 requires dyscognitive or absence seizures occurring at least once a week for at least three consecutive months, "despite adherence to prescribed treatment."  *See* 20 C.F.R., pt. 404, subpt. P, app'x 1, § 11.02(B).  "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control.  During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur.  During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure."  *Id.*  "Absence seizures (petit mal) are also characterized by an alteration in consciousness, but are shorter than other generalized seizures (e.g., tonic-clonic and dyscognitive) seizures, generally lasting for only a few seconds rather than minutes.  They may present with blank staring, change of facial expression, lack of awareness and responsiveness, and a sense of lost time after the seizure.  An aura never precedes absence seizures.  Although absence seizures are brief, frequent occurrence may limit functioning.  This type of seizure usually does not occur after adolescence."  *Id.*

6

instance, although plaintiff claimed daily "episodes," it is not clear that these "episodes" were dyscognitive, absence, or tonic-clonic seizures, and plaintiff's EEGs, including his 72-hour EEG study, have been normal.  R. at 19.  Although plaintiff has had seizures, he has also been found to have low levels of his medication in his blood during laboratory testing and has admitted to noncompliance with his medication.  *Id.*  In April 2020, for instance, plaintiff had "nondetectable" levels of his medication in his system. *Id.*  Plaintiff did not have seizures in August 2020, and his laboratory results showed "appropriate medication levels."  *Id.*  The ALJ identified almost a dozen instances of seizure activity and follow-up medical care, but did not find weekly seizure activity for three months "despite adherence to prescribed treatment."  *See* R. at 19–21; *see also* 20 C.F.R., pt. 404, subpt. P, app'x 1, § 11.02(B).  The ALJ noted numerous instances of plaintiff experiencing seizures after not taking his medication as prescribed, none of which could suffice under Listing 11.02.  *See id.*  In other instances, plaintiff had to be warned not to use marijuana, which could interact with one of his medications, R. at 21, yet plaintiff had a positive cannabinoid screen after this warning and also used caffeine, which he was told not to do.  R. at 21–22.  Thus, although plaintiff testified to having five seizures per month, R. at 47, and reported one or two weekly seizures to a physician in January 2020, R. at 576, and August 2020, R. at 586, the ALJ did not find plaintiff's complaints and testimony to be supported by medical evidence, as there was no evidence of seizures with this frequency besides plaintiff's say-so.  R. at 23.

Plaintiff argues that the ALJ "failed to address [plaintiff's] *absence* seizures and further failed to provide good reasons for finding that [plaintiff's] statements were inconsistent."  Docket No. 13 at 10.  The Court disagrees.  The ALJ's decision does not

distinguish between different kinds of seizures that plaintiff experienced, but rather appears to discuss all seizure activity complained of in the records, meaning that the ALJ did consider absence seizures.  Moreover, plaintiff does not identify a particular three-month stretch of weekly absence seizures that the ALJ purportedly overlooked. *See generally* Docket No. 13.  Thus, plaintiff has failed to show that the ALJ's decision was not supported by substantial evidence.  *See Biestek*, 139 S. Ct. at 1154.  Rather, the Court finds that the ALJ's decision is supported by sufficient evidence for a "reasonable mind [to] accept as adequate to support" the ALJ's conclusion.  *Id.* Similarly, plaintiff has not shown that the ALJ's decision is "overwhelmed by other evidence in the record."  *See Musgrave*, 966 F.2d at 1374.  The Court cannot reweigh the evidence or reverse the ALJ even if the Court would have reached a different conclusion.  *See Flaherty*, 515 F.3d at 1070.

Plaintiff argues that the ALJ did not follow Social Security Rule ("SSR") 16-3p. Docket No. 13 at 10–11.  SSR 16-3p requires an ALJ to follow a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms."  SSR 16-3p.  The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  R. at 19.  Thus, the ALJ complied with this step.

Second, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  SSR 16-3p.  Under SSR 16-3p, an ALJ must "consider all of the evidence in an individual's record," including "all of the individual's symptoms . . . and

the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record," *id.*, as well as the claimant's "statements about the intensity, persistence, and limiting effects of symptoms" and evaluates whether the claimant's "statements are consistent with objective medical evidence and the other evidence."  SSR 16-3p(2)(a).  For instance, the ALJ takes account of the claimant's "attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed."  *Id.*  The ALJ evaluated plaintiff's symptoms and determined that they were not sufficient for a finding that plaintiff is disabled.  As the Commissioner notes, plaintiff's records showed noncompliance with medication and use of caffeine and marijuana.  *See, e.g.*, R. at 313, 315, 364, 395, and 495.  And plaintiff's seizures were largely controlled with medication and treatment.  *See, e.g.*, 313, 320, 322, 330.  The ALJ thus considered the entire record, including plaintiff's statements, and found that those statements were not consistent with the objective medical evidence.  The Court cannot reweigh the evidence that the ALJ considered, and plaintiff does not identify other evidence that could have overwhelmed the ALJ's decision.  *See Flaherty*, 515 F.3d at 1070; *Musgrave*, 969 F.2d at 1374.  The Court, therefore, overrules this objection.

### B.  Dr. Ray's Opinion

Plaintiff objects that the ALJ erred in finding Dr. Ray's opinion was not persuasive.  Docket No. 13 at 11–14.  Dr. Ray found plaintiff was not limited in his ability to perform simple and repetitive tasks; mildly limited in his ability to perform detailed and complex tasks, to complete work activities without special supervision, and to accept instructions from supervisors; and moderately limited in his ability to maintain regular

9

attendance, perform work activities on a consistent basis, complete a normal workday without interruptions from his psychiatric conditions, interact with coworkers and the public, and deal with the usual stressors encountered in competitive work.  R. at 359.

The ALJ noted that Dr. Ray, who conducted a one-time psychological consultative examination of plaintiff, did not adhere to the relevant criteria to determine plaintiff's RFC or provide any specific functional limitations.  R. at 17.  Moreover, Dr. Ray relied on the one-time exam for her findings, rather than a "longitudinal review of [plaintiff's] medical records."  *Id.*  The ALJ thus concluded that Dr. Ray's exam findings of plaintiff's "generally intact cognitive functioning and good performance on his formal mental status exam" do not support Dr. Ray's opinion that plaintiff has some limitations, given plaintiff's other records and lack of complaints or treatment.  *Id.*

The Court agrees with the Commissioner that mere disagreement with the ALJ's treatment of Dr. Ray's opinion is not a valid cause for reversing the ALJ.  *See* Docket No. 16 at 13; *see also Biestek*, 139 S. Ct. at 1154.  The ALJ determined that Dr. Ray's opinion was not consistent with plaintiff's normal exam findings, which did not support the moderate limitations set forth in Dr. Ray's opinion.  Therefore, although there may be some support for Dr. Ray's conclusions, a district court may not reverse an ALJ's decision simply because the Court may have reached a different result based on the record.  *See Biestek*, 139 S. Ct. at 1154.  Rather, a court is to consider whether the ALJ's decision was supported by substantial evidence, which is "more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  The Court does not "reweigh the evidence," *see Flaherty*, 515 F.3d at 1070, and the finding of a

10

moderate limitation by one examiner does not mean that the ALJ's decision was "overwhelmed by other evidence in the record."  *See Musgrave*, 969 F.2d at 1374. Unlike Dr. Ray, Gayle Frommelt, Ph.D. and Mark Suyeishi, Psy.D. both reviewed the medical records, including Dr. Ray's records, and concluded that plaintiff had no more than mild limitations and impairments.  R. at 17.  The fact that the ALJ found Dr. Frommelt's and Dr. Suyeishi's opinions more persuasive than Dr. Ray's, because Dr. Frommelt and Dr. Suyeishi reviewed plaintiff's records, does not mean that the ALJ erred.  *See, e.g.*, *Romo v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 182, 186 (10th Cir. 2018) (unpublished) (holding that "[t]he ALJ simply determined that [the physician's] sitting, standing, and walking limitations were not supported by objective evidence, which is a legitimate basis for the ALJ to afford the opinion less weight")

Plaintiff argues that the ALJ erred in finding that there was no evidence of plaintiff's complaints about his mental health.  Docket No. 13 at 12–13.  Although plaintiff may have complained of certain mental limitations, the ALJ found that plaintiff's complaints were not supported by record evidence as discussed above.  The Court does not reweigh this evidence, *see Flaherty*, 515 F.3d at 1070, and the Court notes that plaintiff's routinely normal exam findings are sufficient "relevant evidence [for] a reasonable mind [to] accept as adequate to support a conclusion" support the ALJ's determinations.  *See Biestek*, 139 S. Ct. at 1154.  The Court does not find that plaintiff's subjective complaints of mental limitations, even if such complaints were supported by record evidence, "overwhelm[] other evidence in the record or constitutes mere conclusion."  *Musgrave*, 966 F.2d at 1374.

Finally, plaintiff highlights a statement from his mother, implying that the ALJ

should have considered this statement.  *See* Docket No. 13 at 13.  An ALJ is not required to use the medical opinion framework when evaluating a nonmedical opinion. See 20 C.F.R. § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)–(c) in this section.").  SSR 16-3p states that, "[i]f we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."  Because the ALJ was able to make a disability determination based solely on objective medical evidence, the ALJ did not need to consider other evidence.   "[N]on-medical sources such as family and friends" are "[o]ther sources [who] may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms."  *Id.*  The Court will therefore overrule this objection.

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED October 3, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge